Note. A factor is thus described by Molloy, 465. He is a servant created by a merchant’s letters, and lakes a kind of provision called factorage: he is bound to answer the loss wnich happens by exceed; ing his commission, but a simple servant or apprentice can only incur his mas.er’s displeasure. Extensive commerce renders it necessary for merchants to intrust the sale of their goods, particularly in foreign coun,ties, or remote parts of the same country, to others who do not act under their immediate inspection ; and from thence some rules have resulted, which make the case of a factor very different trom that of a simple servant or clerk. The factor receives hi» directions by way of a commission, and is bound like all other *219 persons authorized to net, by the terms-of his commission, or to answer'the loss himself; for being at a distance, if he was not thus responsible, the merchant who intrusts him might be gre illy rejudiced. If he was empowered to sell simply, he cannot sell upon credit. 1 Nels. Ab. 323. pl. 2. If empowered to sell upon credit at the risk of the owner, the debts will be a loss to the owner ; but if he is to sell upon credit at his own risk, the loss occasioned by bad debts falls upon himself. 2 Str. 1182. When he. sells at his own risk, the action against the purchaser is maintainable in his own name. Bullet ISO., When he acts in his own name beyond sea, being authorized so to do by his commission, he may maintain a suit in his own name, and receive payments, because he is the visible owner. Bullet 130, 156. But if he is not authorized to sell in his own name, but sells and keeps his books in the name of the principal, there I apprehend all payments must be made and received in the name of the principal, and all actions also. Thus there is a decided difference between the case of the factor who sells in the name of the principal, and of him who sells according to his commission in his own name. In the one case the action must be commenced in the name of the principal, and his debt may be set off against it, when that of the factor's can, not; and altliough in both cases the property of the debts remain in the principal, unless perhaps when the factor sells not only in his own name, but at his own risk also ; and upon notice given to the., debtor not to pay the factor, it will invalidate such payment as is afterwards made, should it eventually appear that at the time of payment títere was no balance due to the factor from the principal. The law gives to the factor for the benefit of trade, a lien for the balance due him for all his transactions, as well for his former services as those upon the goods then on hand or last consigned to him ; ami not only upon the goods themselves, but upon the price of them also when sold, and whilst it remains in the hands of the purchaser. Cow. 256. And of course he must have a right to receive until he has received to the amount of the balance due to him. And in case of a dispute between the principal and factor, payments to the one or to the other may be made to be at the peril of the debtor, until it shall be settled by agreement between them, or by a judicial decision. It being a rule of law, that no man shall have it in his power to vary the rights of third persons, or to prejudice them by any act of his. If. Bl. Rep. 84. Cowp. 255. This right of the factor to receive, however, is by virtue of his lien, which the law gives for the security of his balance, not by virtue of any property he has m the goods or debts. 2 Alk 638. But yet when the goods are sold by the factor in his own name, the purchaser cannot set off a debt due from the principal ; for as the principal cannot by any act of his defeat the lien, so neither can he by contracting debts with the purchasers of the goods. Cowp. 256. There can be little doubt therefore, that a factor having once gained the possession of the goods of his principal, may retain them till his balance be paid ; or having sold them, may receive the debts until payment of that balance, unless the purchaser be restrained by notice from the principal from paying the factor, and even then the factor may receive them, if upon the dispute between the principal and him being adjusted, a balance appea-s in his favour. Could. McAuslin be considered in the prosent case as a factor entrusted with the possession of the goods to be sold for the benefit of the company, and there was a balance due to him for the expenditures and services, his receipts might be good until notice to the debtors not to pay him, and such receipts might be binding upon the surviving partners ; foj- *220 they reeognizedhim'by their answer to M’Naughton, & by addressing letters to him as their agent ; and thouph » power to sue might possibly be countermanded by the death of M’Naughion, yet not his power to receive, 'hat being derived from another source, the lien he had on the price of the goods in the hands of the debtor ; but this conclusion can only go upon the supposition of his having been the company’s factor, and will only result when that point, and the other of his being entitled to a balance, shall be established. It does not appear he was ever designed by the company to act for them in that capacity ; he had no commission or authority from them to that effect ; he lived under the immediate and daily inspection of M’Nuugh-fon ; his books were kept in the name of the company This bond is made payable to them ; had any debt been due from the company to the obligor, that might have heen set off against this bond ; neither is if pret'-nded that there is a balance due to M’Austin from the company ; he seems in short to have been nothing more than a simple servant or clerk, « ho in ease of a loss happening to the master, could not have been made liable to it himself; for not pursuing his commission, he was a person from whom M’Naughton might at any time have legally taken possession of the goods, as being only a clerk appointed to assist him in his business. He had not in the lifetime of M’Naughion any legal possession of the goods, exclusive of and distinct from lúm ; he had no power to sell but by and under his immediate direction and as his instrumemt ; and that power was every moment liable to be discontinued whenever M’Naughton should be disposed to discontinue it; the approbation given by the partners in Europe to his appointment, might be founded par'Iy upon the consideration that he was removeable at pleasure, and was under the immediate control of their partner. If such a servant, who for mismanagement and bringing a loss upon his employer, can only incur his displeasure, should still continue the partnership dealing here after the death of the appointing partner, it might'tie productive of extremely ill consequences. A factor is generally a man of some property, or security is taken from him ,• he is to account, and for mis-tnangement his fortune, or that of his securities, is re.-ponsible. The clerk being not entrusted so tar, is not called upon for any security ; lie is taken into employment and continued in it upon his good be-haviour, and is under the continual control and inspection of his master — that is all the security the employer has in general. Should such an one after the death of the employer be permitted to sell his goods, or collect his debts, he might never be able to make satisfaction to the survivors. If there is no authority expressly in point, that decides a power delegated to one by several, to be revoked by the death of one, it is deducible from the nature of this kind of business, and the evil consequences to trade that would ensue, the doctrine of allowing a servant or clerk to go on receiving the monies of the partnership after the death of the partner, that the law cannot be as.contended for in support of'bis payment. It is argued to be a hardship upon the defendant if this payment was not allowed to be good. But there is none — the bond is in the name of M’Naughton & Co. The death of the partner here was notorious. It is a tiling in itself capable of notoriety, and if a man will pay to the clerk aft-, rthe death of the merchant, he acts in his own wrong. It is no more than the common case of debtors paying into the wrong hand — in which case tie is always compellable to pay over agjji. to the right one. This must be clear, that whatever authority was derived from the deceased, as ar as concerned his interest, was countermanded by *221 Ilia deaih. The clerk appoi.t d by him cannot receive his shave of the debts, so as to make himself chargeable for 'ha; share to th - exe-eutors. Their demand v/ilt be against the sui vivara, and ii i- ann a sunaole that the agent cannot affect the estate of th person vi>.. appointed lvm, but at the state time shall affi-ct that of tl o partners in another part of the world at too great a distance to g’ve any check to his conduct ; and after all when perhaps he has gre-uly injured them by mismanagement, that he may be permití. d> to sheher himself by saying he acted as their servant, and is not lia'.lt- to make them any satisfaction. A sum received tv. surviving partner after the death oftffe other, is received in proprio jure, anti not as a partner — because the partnership >s di.-solved by death- Law. Part. 156, 294. 2 Term. 476. And ii seems to follow, 'hat all authority to dispose of goods and receive payments, cease with its dissolution. The survivors, and they only, become answerable to the ex- eutors of the deceaseti; and if they sell the good-, at an undervalue, or otherwise waste the purtnetship in a losing speculation or otherwise, no toss can accrue from thence to the ex- cu1 ors or to the estate of the nece-sed.
If this decision howv .r b- allowed toast rtaiii what the l.-vv ¡s-, as the decision of a jury st- ms to have done in < similai case, 2 Str.1182, then the law n-w is, that where there are several partners, some here and some in England, and the part's r here appoints an ag-ntto assist him in selling goods and receiving debts, and then dies, the agent may continue until notice to the contrtray be given to the debtors, to receive debts an 1 give legal disci urges ; and the death of the partner here is not a countermand ot his authority.
Note. — In addition to the cases cited by the reporter to show the effect .fa dissolution ot n parlm rship by >!>» death of one partner, see Strange & others v Lee, 3 East. Rep 484. See also Dance & others v. Girdler & others 4 Bos. & Pul. Rep 34. Metcalf & others v. Bruin, 12 East. Rep. 400. S. C 2 Camp. N. P. Rep. 422.